UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN TAD MIKKO, #164406,

        Plaintiff,        Civil Case No. 10-12845

v.        Hon. Denise Page Hood
        Magistrate Judge David R. Grand

TED M. SMOCK, ANTOINE S. FAIR and
DARWIN BERTHIAUME,

        Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS SMOCK AND FAIRS' MOTION FOR SUMMARY JUDGMENT [21] AND ON DEFENDANT DARWIN BERTHIAUME'S MOTION FOR SUMMARY JUDGMENT [44]**

Before the Court are Defendants Ted M. Smock and Antoine S. Fair's Motion for Summary Judgment [21] and Defendant Darwin Berthiaume's Motion for Summary Judgment [44], which have been referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, **IT IS RECOMMENDED** that Defendants Smock and Fair's Motion for Summary Judgment [21] be **GRANTED IN PART AND DENIED**. **IT IS FURTHER RECOMMENDED** that Defendant Berthiaume's Motion for Summary Judgment [44] be **GRANTED**, and that he be **DISMISSED** from this action.

**I.    INTRODUCTION**

    **A.    FACTUAL BACKGROUND**

*Pro se* Plaintiff Steven Mikko's amended complaint [33][1] relates principally to the events of September 23, 2008, when he was incarcerated in a segregation unit at the Michigan

---

[1] Plaintiff filed the amended complaint primarily because his original complaint erroneously named "David Berthiaume," Defendant Darwin Berthiaume's brother, and also an MDOC prison

Department of Corrections' Standish Correctional Facility.  Amended Compl. [33] at 1.  Plaintiff alleges that between 8:30 and 9:00 p.m. he was in his enclosed cell when Defendant Darwin Berthiaume, an MDOC sergeant, used chemical agents to subdue a disobedient prisoner in a cell adjacent to Plaintiff's.  *Id.*  Plaintiff states that he immediately began to cough violently, vomited, became dizzy and unable to breathe, and lost consciousness twice.  *Id.*

Plaintiff alleges that Defendant Unit Officer Ted M. Smock opened his cell's window cover, observed him in severe distress and pleading for help, but ignored him.  *Id.* at 2.  Plaintiff alleges that a half hour later another officer, Defendant Antoine S. Fair, similarly opened the cell window cover, observed Plaintiff in the same condition, but ignored his request for medical assistance.  *Id.* at 3.  After "well more than an hour" had passed since Plaintiff's exposure first began, a third officer found Plaintiff still in distress, and then he and Berthiaume removed Plaintiff from his cell and took him to see a nurse.  *Id.*  The nurse gave him a respiratory treatment and monitored his vital signs.  *Id.* at 3-4.  Plaintiff was returned to his cell, where he again had difficulty breathing.  *Id.* at 4.  The next day, he filed a grievance related to: (1) the manner in which the chemical agents were used (claiming that the "ventilation system was deliberately left on while the chemical spray was used") and (2) the delay in providing him with medical care.

Plaintiff claims that he was not seen by health care staff until five days later.  *Id.* at 4-5.  During that time Plaintiff claims that he "began to experience sharp pains in his lower right abdomen each time he coughed."  *Id.* at 5.  Plaintiff was not provided with any medication or treatments when he saw health care.  *Id.*  On October 1, 2008 chemical agents were again used in the cell block.  *Id.* at 5-6.  Plaintiff requested medical treatment because he had difficulty

---

official.  The court granted Plaintiff's motion to substitute in the proper Berthiaume (Darwin) [31], and has entered an order dismissing the improper Berthiaume (David) [35].

breathing, severe coughing and abdominal pain, but he was not seen by a nurse until four days later. *Id.* at 6-7. She concluded that he did not have a hernia. *Id.* at 6-7. However, on November 3, 2008, Plaintiff was examined by a doctor who concluded that Plaintiff had suffered a hernia that was allegedly related to his violent reaction to the prolonged chemical agent exposure. *Id.* at 7. On March 7, 2009, Plaintiff had surgery to repair his hernia. *Id.* at 8.

Plaintiff then filed this action, asserting claims related to both the use of the chemical agents and the timeliness of the medical care he received. Plaintiff claims that Berthiaume "failed to protect [him] from the infliction of unnecessary pain and suffering by using chemical agents in such a manner that he knew or should have known would have exposed Plaintiff to their devastating and debilitating effects" in violation of the Eighth Amendment's ban on cruel and unusual punishment, the Michigan Constitution and Michigan tort law. *Id*. at 9. Plaintiff claims that Smock and Fair were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, and the Michigan Constitution, and that their conduct constitutes intentional infliction of emotional distress under Michigan tort law. *Id.* at 8-9.

Smock and Fair filed a motion for summary judgment [21] arguing that Plaintiff failed to allege their personal involvement in the October 1, 2008 incident. As to the September 23, 2008 incident, they argue that Plaintiff did not have a serious medical need and received prompt medical care regarding his complaints, and that they are entitled to Eleventh Amendment and qualified immunity. Berthiaume, who was not a party to the action at the time Smock and Fair filed their motion, filed his own motion for summary judgment [44] in which he argues that: (1) Plaintiff failed to allege Berthiaume's personal involvement in the challenged conduct and to properly exhaust his administrative remedies; (2) there is no issue of material fact as to the propriety of exposing Plaintiff to secondhand chemical agents directed at another inmate; and; (3) he is entitled

to Eleventh Amendment and qualified immunity from Plaintiff's suit.  Plaintiff responded to both motions.  [27, 47]

## II.   STANDARD OF REVIEW

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  In determining whether a genuine issue of material fact exists, the court must assume the truth of the non-moving party's evidence and construe all reasonable inferences from that evidence in the light most favorable to the non-moving party.  *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The party opposing summary judgment may not rest on its pleadings nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).  Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'"  *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).  "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

## III.   ANALYSIS

### A.   All DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT AS TO THE OCTOBER 1, 2008 INCIDENT

4

To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege sufficient facts to establish that each named defendant was "personally involved" in the activity forming the basis of the alleged constitutional violation, or that the defendant "otherwise encouraged or condoned" the actions of others. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362 (1976)); *see also Murphy v. Grenier*, 406 Fed. Appx. 972, 973 (6th Cir. 2011). Defendants argue that they are entitled to summary judgment as to the October 1, 2008 incident because Plaintiff made no allegation against them with regard to that incident. Defs.' Mot. S.J. [21] at 7; Berthiaume Mot. S.J. [44] at 11-12. Plaintiff agrees that the Defendants "were not personally involved in the October 1, 2008 incident." Doc. #27 at 3; Doc. #47 at 3.

Accordingly, the court should grant each of the Defendants' summary judgment motions as to any of Plaintiff's claims arising out of the October 1, 2008 incident.

**B.   DEFENDANTS SMOCK AND FAIR ARE NOT ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFF'S DELIBERATE INDIFFERENCE CLAIM**

The Eighth Amendment prohibits prison officials from "unnecessarily and wantonly inflicting pain" on prisoners by acting with "deliberate indifference" to inmates' serious medical needs. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983." *Id*. (citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985). Such a claim may be cognizable if "the indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care" for a serious medical need. *Id.* (quoting *Estelle*, 429 U.S. at 104).

To sustain a deliberate indifference claim for denial of medical care, a plaintiff must satisfy both an objective component and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834

5

(1994); *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). The objective component requires the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834. A "sufficiently serious" need must be more than a "mere discomfort or inconvenience." *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005) (quoting *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992)). Rather, it must pose "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834; *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). The standard is met where a prisoner's medical condition is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore,* 390 F.3d at 900.

The subjective component requires a plaintiff to show "that prison officials knew of, and acted with deliberate indifference to, an inmate's health or safety." *Flanory*, 604 F.3d at 254. "[S]omething more than mere negligence" is required, and liability exists only if the official acts with a "sufficiently culpable state of mind" and "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 834-837. *See also Flanory*, 604 F.3d at 254; *Brown*, 207 F.3d at 867.

      **i.**      **Objective Component – "Seriousness" of Plaintiff's Medical Needs**

As to the objective prong of the Eighth Amendment analysis, Smock and Fair argue that Plaintiff's claim must fail because he cannot demonstrate a "serious medical need." Defs.' Mot. S.J. [21] at 9. They first argue that Plaintiff's condition was not sufficiently "serious" under the law because his reaction to the chemical agents – "violent coughing, burning watery eyes, dizziness, vomiting and an inability to catch his breath" – was exactly the reaction that such chemicals are specifically designed to produce." *Id.* (citing *Harris v. Jones*, 2009 WL 6338406 (W.D. Mich. July 13, 2009)). The court disagrees. First, simply because a product approved for

6

use by prison guards to maintain order is designed to cause certain debilitating effects it does not follow that those effects cannot, as a matter of law, give rise to a serious medical need. Second, the *Harris* case on which Defendants rely was overturned by the Sixth Circuit and now supports a conclusion contrary to the one urged by Defendants.

In *Harris*, a disobedient prisoner had to be extracted from his cell by officers using chemical agents. In the process, he suffered difficulty breathing, vomiting, and a burning sensation to his skin, eyes, and nose; the inmate was then restrained and removed from his cell, but was not permitted to take a shower for twenty-four hours. *See Harris*, 2009 WL 6338406 at *1-2. The district court initially granted summary judgment to the defendants based on a finding that the "normal aftereffects of being exposed" to chemical agents did not constitute a sufficiently serious medical condition under the objective prong. *Id.* at *8. But the Sixth Circuit reversed, holding that based on the record evidence, "a reasonable jury could infer that the officers engaged in an unjustified use of force against a compliant prisoner and then refused to mitigate his suffering." *Harris v. Jones*, 2011 WL 3844174, *1 (W.D. Mich. 2011) (quoting unpublished Sixth Circuit decision). Implicit in that ruling is a finding that the prisoner's post-exposure symptoms could constitute a serious medical need despite.

Here, even more compelling facts exist which preclude summary judgment on the objective element of Plaintiff's claim. For one, the target of the chemical agents in this case was not Plaintiff, who apparently was doing nothing wrong at the time, but rather, a disobedient inmate in an adjoining cell. Moreover, whereas the offending prisoners in both this case, Defs.' Mot. S.J. [21] at Ex. E, and in *Harris*, 2011 WL 3844174 at *2, were subdued and removed from their cells shortly after the exposure, Plaintiff was left in an enclosed cell, without access to fresh air, for almost 90 minutes. Amended Compl. [33] at 1. *See also Thomas v. Northern*, 574 F. Supp. 2d

7

1029, 1034-35 (E.D. Mo. 2008) (denying summary judgment on an Eighth Amendment claim where a prisoner was left in his cell "without adequate facilities to wash for several hours" after the use of pepper spray)). Under these circumstances, the court rejects Defendants' suggestion that the unmitigated effects of continued exposure chemical agents cannot, as a matter of law, constitute a serious medical need. *See* Defs.' Mot. S.J. [21] at 10.

Defendants Smock and Fair also note that Plaintiff was treated by medical staff within an hour and a half of his chemical exposure, and refer the Court to Plaintiff's medical records, which They propose to demonstrate an absence of facts, diagnosis, injury, or illness that could possibly support a finding that Plaintiff exhibited a "serious medical need" at the time of the incident. Doc. #21 at 10; *see also* Sealed Exhibit D [22], Excerpts of Plaintiff's Medical Records. However, if Plaintiff's condition was as he alleged – enclosed for about 90 minutes in a windowless cell, experiencing violent and uncontrollable coughing to the point of vomiting, burning and watering eyes and nose, dizziness, and shortness of breath to the point of twice losing consciousness, Pl.'s Resp. [27] at 5 – then the court finds he would have had a sufficiently obvious need for medical treatment at that time, even if those symptoms had subsided by the time he saw a nurse. *Harris*, 2011 WL 3844174 at *2.

Moreover, although the medical records submitted by Defendants are relevant to the question of the seriousness of Plaintiff's medical needs immediately prior to his being seen by the nurse, they are not dispositive on that issue. First, one would expect those chemicals to have dissipated somewhat during the time Plaintiff was allegedly pleading for help. Thus, the mere fact that Plaintiff was doing better when he saw the nurse after about 90 minutes of exposure to the chemicals does not mean he was not seriously suffering during the interim period. Second, whatever treatment Plaintiff received that night did not fully address his condition, as he continued

to need medical treatment for his injuries. *See supra*, p. 2. Finally, Plaintiff ultimately had hernia surgery, the need for which he claims was caused by his "prolonged and aggravated coughing" stemming from the September 23, 2008 incident. Amended Compl. [33] at 7. Taken together, these facts raise a material question about the seriousness of his medical condition during the relevant time.

Finally, quoting *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001), Defendants argue that "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay…" Doc. #21 at 13. However, the Sixth Circuit has clarified that its ruling in *Napier* does not apply "where a plaintiff's claims arise from an injury or illness 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 899-900. As noted above, the court finds that Plaintiff alleged such an injury. Accordingly, he was not required to present evidence showing that his condition worsened due to the delay in receiving medical care. *Id.*

### ii.     Subjective Component – Defendants' Knowledge and Intent

As to the subjective component, Smock and Fair argue that they were "clearly not indifferent to [Plaintiff's] care," insofar as they did not possess the "sufficiently culpable state of mind" required for Plaintiff's claim to succeed. *See* Defs.' Mot. S.J. [21] at 10. Smock is now deceased, and no evidence was provided as to his specific involvement in the September 2008 events. However, Fair vigorously "disputes Plaintiff's claims that he was in a condition that required immediate medical assistance." *See id*. In his affidavit, Fair testifies that "proper precautions were taken when the prisoner in the cell adjoining [Plaintiff's] required the use of Chemical Agents," including the presence of health care staff during the cell extraction "in case of

9

an adverse reaction," *Id*. at Ex. C ("Fair Affidavit"), ¶ 3. Fair argues that those staff members "would have been able to hear [Plaintiff's] shouts from the adjoining cell door," and that Plaintiff "was not in respiratory distress," but rather, "was kicking and pounding on his door due to being upset that the other prisoner was gassed." *Id*. Fair recalls that, when he looked in the cell window, Plaintiff was standing up and not lying on the ground as alleged. *Id*. Fair reports that he did, indeed, perform his job by notifying Health Care of Plaintiff's concerns. *Id*.

Although Fair's version of events very well may be accepted over Plaintiff's, Fair has not established his entitlement to summary judgment. First, while Fair claims that a health care staff member would have heard Plaintiff's pleas for help, he did not provide an affidavit from any such employee on that matter. Nor did he provide any documentary or other evidence of his reporting Plaintiff's request for medical attention. Second, as the *Farmer* Court explained, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. Here, accepting as true[2] Plaintiff's allegations, which have at least some evidentiary support[3], a reasonable jury could find that the Smock and Fair knew of, but disregarded Plaintiff's serious need for medical attention. *Id.*; *Alexander*, 576 F.3d at 558; *Harris*, 2011 WL 3844174 at *2. If so, a jury could also conclude that Plaintiff was

---

2 *Flanory*, 604 F.3d at 254; *Ciminillo*, 434 F.3d at 464

3 For instance, there appears to be no dispute that: he was in an enclosed cell without access to outside air when he was exposed to the chemical agents; those chemical agents were designed to be physically debilitating; Plaintiff suffered a reaction that ultimately led to him receiving medical attention; the "targeted" prisoner was removed promptly from his cell, while Plaintiff was left in his; Smock and Fair each observed Plaintiff in his cell at some point after his exposure to those chemicals; and Plaintiff was not taken to receive medical attention until another guard had begun his "rounds" sometime later.

"unnecessarily and wantonly" subjected to serious pain in violation of the Eighth Amendment. *Blackmore*, 390 F.3d at 895. Thus, Plaintiff has raised a material question of fact as to the issue.

Because a material question of fact exists on both the objective and subjective prongs of Plaintiff's Eighth Amendment deliberate indifference claim against Smock and Fair, the court recommends denying their summary judgment motion as to the September 2008 incident.

### iii. Defendants Fair and Smock Are Not Entitled to Summary Judgment on the Grounds of Qualified Immunity

Defendants Fair and Smock raise the doctrine of qualified immunity[4] as an affirmative defense to Plaintiff's claims. Defs.' Mot. S.J. [21] at 13-15. Under that doctrine, government officials performing discretionary functions are shielded from civil liability unless their conduct violates clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In conducting the two-step inquiry into whether "the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established," the Court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Bishop v. Hackel*, 636 F.3d 757, 772 (6th Cir. 2011).

Here, the constitutional right at issue – a prisoner's Eighth Amendment right to timely and adequate care for his or her serious medical needs – was "clearly established" at the time of the events that form the basis of this action. *See Pearson*, 555 U.S. at 236; *Estelle*, 429 U.S. at 104.

---

4 They also raised Eleventh Amendment immunity, which applies only to claims brought against a government official in his official capacity. *Cady v. Arenac County*, 574 F.3d 334, 344 (6th Cir. 2009). However, Plaintiff correctly states that that doctrine is inapplicable here because "each [defendant] is clearly sued only in his *personal* capacity." *See* Pl.'s Resp. [27] at 7; Amended Compl. [33] at 2, 5. Accordingly, Smock's and Fair's motion for Eleventh Amendment immunity should be denied as moot.

Furthermore, for the reasons noted above, genuine issues of fact remain as to whether Fair and Smock knowingly and intentionally ignored the Plaintiff's serious medical needs in violation of the Eighth Amendment. Accordingly, they are not entitled to summary judgment on the grounds of qualified immunity. *See Pearson*, 555 U.S. at 236.

### C. DEFENDANT BERTHIAUME IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS FAILURE TO EXHAUST ARGUMENT, BUT IS ENTITLED TO SUMMARY JUDGMENT ON THE MERITS OF PLAINTIFF'S CRUEL AND UNUSUAL PUNISHMENT CLAIM

#### i. Exhaustion of Administrative Remedies

Plaintiff's federal claims are subject to the requirements of the federal Prisoner Litigation Reform Act ("PLRA"), which provides that a prisoner may not bring an action, under 42 U.S.C. § 1983 or other federal law, to challenge the conditions of his or her confinement until all available administrative remedies have been exhausted. *See* 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The exhaustion requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *Woodford*, 548 U.S. at 89. To properly exhaust his remedies, a prisoner must "compl[y] with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91; *see also Jones v. Bock*, 549 U.S. 199, 217-18 (2007). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. An inmate is not required to plead or demonstrate exhaustion in the complaint; rather, failure to exhaust is regarded as an affirmative defense that must be raised by a defendant. *Id*. at 216.

Defendant Berthiaume has done so here, arguing that Plaintiff's grievance regarding the September 23, 2008 incident did not comply with the MDOC's grievance procedures because it did not identify him by name. Berthiaume Mot. S.J. [44] at 5.

In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances," which provides for what is essentially a three-step process the prisoner must follow to properly exhaust the grievance. *Id*. at Ex. A (the "Policy"). At Step I, the prisoner must submit to the Grievance Coordinator, or "Respondent," a completed "Prisoner/Parolee Grievance Form (CSJ-247A)" containing a concise statement of the issues, information regarding the facts of the issues being grieved, and the "[d]ates, times, places, and names of all those involved." *Id.* at ¶ R. If the prisoner is not satisfied with the Step I resolution, the Policy provides for additional review at Step II and Step III.

### a. **The Relevant Portions of Plaintiff's Grievance**

On September 24, 2008, Plaintiff filed Grievance SMF-08-10-1834-22d (the "Grievance") regarding the prior day's incident in which he was exposed to the chemical agents that had been sprayed into another inmate's cell. Berthiaume Mot. S.J. [44] at Ex. B. Plaintiff provided a lengthy "grievance summary." Although the bulk of the summary relates to his assertions that Smock and Fair failed to provide him with timely medical care, he also specifically grieved that "[t]he unit ventilation system was deliberately left on while the chemical spray was used," *id.* at 8, and that the "staff member responsible for the use of the chemical agent was negligent and grossly negligent…" *Id.* at 12. Later in the summary he wrote: "Any individual accused in this grievance but not identified, will be so when their identity becomes available." *Id.* at 13.

On October 16, 2008, the Step I Respondent provided a response which clearly recognized that Plaintiff was grieving not only the alleged denial of medical care, but also "that the ventilation

13

system was not turned off prior to chemical agents being used in the unit." *Id.* at 6. The Respondent rejected that portion of the Grievance because "[n]owhere in policy does it state the ventilation system must be turned off prior to the use of chemical agents." *Id.* In his Step II appeal, Plaintiff continued his challenge to the manner in which the chemical agents were used:

> If MDOC policy/protocol for use of gas does not require turning off the ventilation system, why not? Why was it turned off after the gas was used? Why was it turned off before gas was used 7 days later? What is the purpose of introducing chemical agents to the unit ventilation system?"

*Id.* at 4. As to this issue, the prison's Step II response simply stated that the "issue regarding the use of chemical agents was appropriately addressed at Step I. Appeal denied." *Id.* Plaintiff "renewed" his grievances at Step III and they again were denied. The prison's Step III response again recognized Plaintiff's assertion that "the unit ventilation system was intentionally left on during the incident," and, with more specificity than in its prior responses noted: "PD 04.05.112 'Managing Disruptive Prisoners' governs the use of chemical agents to manage a disruptive prisoner. There is no specific requirement in this policy that unit ventilation systems be turned off prior to use of chemical agents. No evidence was presented from which to conclude that ventilation was intentionally left on to cause injury/distress to the grievant…" *Id.* at 2.

At no point in the Grievance, or in any of his appeals, did Plaintiff identify Berthiaume as the guard responsible for using the chemical agent without first turning off the ventilation system. However, at some point Plaintiff apparently came to believe that Berthiaume was responsible, and identified him as such in his amended complaint. Amended Compl. [33] at 9.

### b. Analysis of Berthiaume's Failure to Exhaust Argument

Berthiaume bears the burden of proof on his failure to exhaust defense. *Jones*, 549 U.S. at 216; *Vandiver v. Correctional Medical Services, Inc.*, 326 Fed. Appx. 885, 888 (6th Cir.2009).

As the moving party with the burden of proof, Berthiaume faces a "substantially high[] hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Under that high standard, the court must recommend rejecting Berthiaume's argument that Plaintiff did not properly exhaust the Grievance against him simply because it failed to mention him by name as the guard responsible for using the chemical agents without first closing the ventilation system. Berthiaume Mot. S.J. at 5-11.

Berthiaume's argument errs by misconstruing Plaintiff's Grievance as if it related only to the medical care he received after being exposed to the chemical agents, and not to the manner in which the chemicals were used. *Id.* at 9-11. To the contrary, although most of the Grievance related to delayed access to medical care, Plaintiff did specifically grieve that "[t]he unit ventilation system was deliberately left on while the chemical spray was used." *Id.* at 8. The issue is that Plaintiff was unaware of who had allegedly engaged in that conduct.[5] However, Plaintiff's lack of knowledge on that point is not a sufficient basis to find that he failed to properly exhaust the grievance as to the challenged conduct.

Paragraph R of the Policy provides that "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included" in the prisoner's written grievance. Policy, ¶ R. Thus, in general, a plaintiff "fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." *Hall v.*

---

5 Of course, as discussed in the next section, Plaintiff's lack of knowledge on this point underscores his inability to satisfy the subjective component of his claim against Berthiaume.

*Warren*, 43 Fed. Appx. 99, 106 (6th Cir. 2011). However, because the purpose of the exhaustion requirement is to "give the defendants fair notice that the grievance [is] directed against them," a court "may excuse a prisoner's failure to identify by name a particular defendant in a grievance when it is obvious from the facts alleged in the grievance that the defendant was involved." *See Vandiver*, 326 Fed. Appx. at 890; *Calhoun v. Hill*, 2008 WL 4277171, *3 (E.D. Mich. Sept. 17, 2008) (citing *Binion v. Glover*, 2008 WL 4097407, *4 (E.D. Mich. Aug. 29, 2008)); *see also Emerson v. Ingraham*, 2011 WL 3813198, *3 (W.D. Mich. July 26, 2011) (suggesting that, if a prisoner is unable to "name" a defendant in a Step I grievance, an indication of the individual's "involvement in the issue being grieved" is adequate to meet exhaustion requirements). Here, the Grievance respondents clearly understood Plaintiff to be grieving the person who allegedly "deliberately left on [the ventilation system] while the chemical spray was used." Plaintiff apparently came to believe that Berthiaume was that person, and amended his complaint accordingly. *See* Amended Compl. [33] at 9. While Berthiaume denies any wrongdoing, he does not deny that he was the officer who used the chemical agents during the incident in question. Berthiaume Mot. S.J. at 12-14; Ex. G. Accordingly, he has not established his entitlement to summary judgment. *Arnett*, 281 F.3d at 561.

### ii. **Berthiaume is Entitled to Summary Judgment on Plaintiff's Cruel and Unusual Punishment Claim**

Even assuming it was Berthiaume who utilized the chemical agents during the incident in question, Plaintiff's § 1983 claim against him fails.

The parties agree that Plaintiff's allegations against Berthiaume raise a "conditions of confinement" claim under the Eighth Amendment. *See* Berthiaume Mot. S.J. [44] at 13; Pl.'s Resp. [47] at 4; *Farmer*, 511 U.S. at 832, 834 (prison officials have a duty to "provide humane

16

conditions of confinement"). As with Plaintiff's claims against Smock and Fair, his conditions of confinement claim against Berthiaume contains both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). In short, he must show that "(1) the deprivation alleged is, objectively, 'sufficiently serious,' and (2) the prison official had a sufficiently culpable state of mind." *Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 352 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 834). A showing of sufficient culpability requires that the prison official was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Because Plaintiff fails so plainly as to the subjective component of his claim against Berthiaume, the court will limit its analysis to that issue.

Plaintiff cannot meet the subjective prong of a conditions-of-confinement analysis because he cannot show that Berthiaume was either "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," or that he actually drew such an inference. *See Farmer*, 511 U.S. at 837. Although Plaintiff's Grievance alleged that the person who used the chemicals without turning off the ventilation system did so "deliberately," as noted above, *supra* fn. 5, Plaintiff was unaware at the time of that person's identity. As such, without some other evidence to corroborate Berthiaume's alleged "deliberateness" – and Plaintiff presented none – his allegation is nothing more than an unsubstantiated, speculative theory as to Berthiaume's intent. Such allegations are not sufficient to raise a material question of fact on the subjective prong of Plaintiff's claim. *Alexander*, 576 F.3d at 558; *Kelly v. Warren County Bd. of Com'rs.*, 396 Fed. Appx. 246, 250 (6th Cir. 2010) ("mere speculation does not create a genuine issue of material fact to overcome summary judgment."). Moreover, the evidence suggests that Berthiaume did not act with the intention of harming Plaintiff. The Grievance responses all consistently indicated that

17

whoever used the chemical agents on the night in question did so without violating any MDOC policy, *see supra*, p. 14, and Plaintiff points to no evidence to the contrary. In sum, there is simply no evidence Berthiaume acted with the intent necessary to sustain Plaintiff's claim. Accordingly, the court should grant Berthiaume's Motion for Summary Judgment [44].

### iii. The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims Against Berthiaume

Having recommended the dismissal of Plaintiff's federal claims against Berthiaume, the court should also decline to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. §1367(c)(3); *see Brown v. Cassens Transport Co.*, 546 F.3d 347, 363 (6th Cir. 2008) (noting that federal court should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the federal claims); *Nali v. Angelo*, 2011 WL 824596, at *3 (E.D. Mich. Mar. 3, 2011). Thus, those claims should be dismissed without prejudice.

## IV. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendant Smock and Fairs' Motion for Summary Judgment [21] be **GRANTED** as to any claims arising out of the October 1, 2008 incident alleged in Plaintiff's amended complaint, but should otherwise be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendant Berthiaume's Motion for Summary Judgment [44] be **GRANTED**, and that Defendant Berthiaume be **DISMISSED** from this action with prejudice as to Plaintiff's federal claims, and without prejudice as to his state law claims.

Dated: March 7, 2012　　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to file objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the undersigned Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may file a response within fourteen (14) days of its service with a copy of another party's objections. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). It is recommended that any such response be concise, but commensurate in detail with the objections, and that it address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that, on March 7, 2012, the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing.

                                           s/ Felicia M. Moses
                                           FELICIA M. MOSES
                                           CASE MANAGER