UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN TAD MIKKO, #164406,

        Plaintiff,        Case No. 10-12845
                                  Honorable Denise Page Hood
        v.                     Magistrate Judge David R. Grand

TED M. SMOCK, *et al.*,

        Defendants.
_____/

## ORDER DENYING PLAINTIFF'S SECOND
## MOTION TO COMPEL PRODUCTION OF DOCUMENTS [93]

Before the court is Plaintiff Steven Mikko's Second Motion to Compel Production of Documents, filed on October 10, 2012. (Doc. #93). Defendants filed a response to this Motion on October 22, 2012 (Doc. #95), and Plaintiff filed a reply on November 13, 2012 (Doc. #97).

### A.    Background

Plaintiff's First Amended Complaint alleges that he suffered physical injuries as a result of Defendants' alleged deliberate indifference arising out of an incident in which prison guards sprayed chemical agents into the cell next to Plaintiff's. More specifically, Plaintiff asserts that Defendants were deliberately indifferent in allegedly allowing his continued exposure to the chemical agents and failing to seek prompt treatment for his alleged serious medical needs. Plaintiff alleges that, as a result of Defendants' actions, he experienced difficulty breathing, severe coughing, and abdominal pain, and subsequently was diagnosed with a hernia, which needed to be surgically repaired. (Doc. #33).

On July 19, 2012, Plaintiff served a Request for Production of Documents on Defendants, setting forth six specific document requests. (Doc. #93 at Ex. 1). On September 20, 2012,

Defendants filed responses and objections to Plaintiff's discovery requests.[1]  (*Id.* at Ex. 2).  On October 10, 2012, nearly two months after the discovery motion cutoff in this case, Plaintiff filed the instant motion to compel.

**B.     Analysis**[2]

   *1.     Request No. 1*

In Request No. 1, Plaintiff seeks "an alphabetical or numerical index of the prisoner population at the Standish Maximum Correctional Facility (SMF) as it was constituted on September 23, 2008."  (Doc. #93 at Ex. 1).  Defendants objected to producing such a document on two bases:  first, that the requested document does not exist, because although such lists were printed periodically, they were not required to be maintained; and second, that providing the requested information raises "significant security concerns."  (*Id.* at Ex. 2).

In his motion to compel, Plaintiff argues that such lists do, in fact, exist, and he attaches a page from "just such an index" from the Lakeland Correctional Facility (where Plaintiff is currently incarcerated) as "prima facie proof" of the existence of the document he requests.[3]  (*Id.*

---

[1] Defendants' objections and responses were untimely, as they admittedly "fell through the cracks" during the course of discovery.  However, Plaintiff did not file a motion to compel challenging Defendants' failure to respond within the time frame established by this court's scheduling order, and Plaintiff has addressed Defendants' objections on the merits.  (Doc. #61).  For these reasons, and because the court has granted Plaintiff's motion to reopen discovery (Doc. #92; #99), the court will consider the merits of Defendants' objections herein.

[2] As set forth below, the primary issues before the court are Defendants' responses to Request Nos. 1, 5, and 6.  However, in Plaintiff's motion to compel, he also references Defendants' responses to Request Nos. 2 and 3 (wherein Defendants agreed to provide certain information to the court under seal).  (Doc. #93 at ¶5).  Plaintiff indicated in his motion that this procedure is satisfactory to him.  (*Id.*).  In addition, in their response to Plaintiff's motion, Defendants provided the information sought in Request No. 4, which Plaintiff, in his reply, also appeared to deem sufficient.  (Doc. #95 at 5; Doc. #97 at 1).  Thus, the court need not address Request Nos. 2, 3, or 4.

[3] According to Defendants, the list Plaintiff attached to his motion is considered "contraband" and should not be in Plaintiff's possession, as it contains the names, numbers, and risk assessment information of fellow prisoners.  (Doc. #95 at 5).  Prison officials have apparently

at Ex. 4). In response to Defendants' objection on security grounds, Plaintiff asserts that the "only information sought be [sic] Plaintiff in the requested document is the identify [sic] of the occupant of cells adjacent to and surrounding Plaintiff's cell on September 23, 2008," as Plaintiff believes these individuals are "material witnesses" to the events giving rise to his claim. (*Id.* at ¶6). In their response to Plaintiff's motion, Defendants reiterate that the document requested by Plaintiff does not exist. (Doc. #95 at 4). According to Defendants, the type of list sought by Plaintiff was "constantly changing" because prisoners changed housing units "on a daily basis." (*Id.*). Thus, the list Plaintiff seeks was not maintained (nor was it required to be maintained under the State's Retention and Disposal Schedule) and does not exist. (*Id.*). Additionally, Defendants note that SMF closed on October 31, 2009. (*Id.*).

Plaintiff does not rebut Defendants' assertion that the specific list he seeks in Request No. 1 – namely, an alphabetical or numerical index of the prisoner population at SMF on September 23, 2008 – simply does not exist. Thus, Defendants clearly cannot be ordered to produce it.[4]

*2. Request No. 5*

In Request No. 5, Plaintiff seeks printouts from the Law Enforcement Information Network (LEIN) showing the criminal records (if any) of various defendants and witnesses. (Doc. #93 at Ex. 1). Defendants objected to producing such printouts, saying that they do not "possess, maintain or control the information contained in the Law Enforcement Information Network" and that Plaintiff would have to seek that information from a law enforcement entity.

---

since confiscated it from Plaintiff, an issue raised in his recently-filed motion for preliminary injunction. (Doc. #98). The court will address that issue in due course after briefing is complete.

[4] In his reply brief, Plaintiff reiterated that in requesting the index, he "merely seeks to identify the occupants of the cells adjacent to and surrounding his cell…" (Doc. #97 at 4). As noted above, the court has granted Plaintiff's motion to reopen discovery, and he is certainly free to attempt to obtain that information through appropriate discovery practice.

(*Id.* at Ex. 2).  Defendants further objected to this request on the grounds of relevance and asserted that the request was designed to "harass them and other prison staff." (*Id.*).

In his motion to compel, Plaintiff asserts that his request for the LEIN documents will lead to discoverable evidence which is relevant for impeachment purposes under Fed. R. Evid. 609. (*Id.* at ¶12).  In addition, Plaintiff attaches to his motion a copy of MDOC Policy Directive 01.04.135, entitled "Law Enforcement Information Network," which he asserts establishes that Defendants do, in fact, have access to the LEIN and the information contained therein. (*Id.* at Ex. 5).  In response, Defendants assert that, pursuant to the terms of this Policy Directive, LEIN information may not be disseminated for purposes of civil litigation, and Plaintiff is not authorized to receive LEIN printouts. (Doc. #95 at 5).  They rely on the following two provisions in the Policy Directive:

> E.  LEIN operators shall access LEIN only as necessary to comply with Department policy (e.g., verification of eligibility for employment or to carry a firearm; verification of eligibility for placement on a prisoner's approved visitors list).  Under no circumstances shall employees access LEIN or request and/or receive LEIN information for personal reasons.
>
> N.  LEIN information shall be disclosed only as necessary to comply with Department policy (e.g., preparation of Pre-sentence Investigation Reports)…under no circumstances shall the actual LEIN printout or a copy of a LEIN printout be given to … anyone not authorized to receive LEIN information…

(Doc. #93 at Ex. 5, ¶II(E, N)).  In reply, Plaintiff challenges Defendants' interpretation of the provisions. (Doc. #97 at 3).

Defendants' position is persuasive.  The foregoing provisions make clear that these individual defendants would violate the Policy Directive if they provided Plaintiff with the requested LEIN printouts.[5]  Accordingly, the court will not order the production of LEIN

---

[5] This says nothing about the potential relevance and/or admissibility of Defendants' or other

4

printouts – the disclosure of which are very tightly proscribed by Policy Directive – during the course of this civil case.

       3.     *Request No. 6*

In Request No. 6, Plaintiff seeks, "Maintenance records, engineering designs or blueprints, or any other document or record in the possession of the MDOC which identifies the designer, manufacturer, installer and/or maintenance keeper of the air-circulation or ventilation system in Housing Unit 2 at SMF on September 23, 2008." (Doc. #93 at Ex. 1). Defendants objected to this request on relevance grounds and as follows:

> . . . due to safety and security reasons as these documents are considered high security documents that could reveal the structural design of correctional facilities and possibly assist with an escape attempt. It should also be noted that the Plaintiff has a felony conviction for escape.

(*Id.* at Ex. 2).

In his motion to compel, Plaintiff apparently narrows the scope of his request, asserting that he "clearly requests nothing more than the identity of someone familiar with the air-circulation or ventilation system in SMF's Unit 2." (Doc. #93 at ¶8). In response to this statement, Defendants identified Frank Esselin as the individual with the knowledge Plaintiff seeks. (Doc. #95 at 5-6). In reply, however, Plaintiff confuses the issue by asserting that "the identity of the SMF Physical Plant Supervisor is not the information sought with Request No. 6 . . . ." (Doc. #97 at 2).

The court is perplexed by Plaintiff's arguments. As set forth above, Plaintiff appeared in his motion to narrow the scope of Request No. 6, asking only for "the identity of someone familiar with the air-circulation or ventilation system in SMF's Unit 2." (Doc. #93 at ¶8). In their response, Defendants provided this very information. It does not appear that Plaintiff has

---

testifying witnesses' prior criminal records under FRE 609. However, to the extent Plaintiff desires to obtain that information, he must do so through appropriate discovery practice.

deposed Mr. Esselin, and thus it is unclear why Plaintiff believes Defendants' identification of him in response to the discovery request is improper. Thus, at least until Plaintiff establishes that Mr. Esselin is not "familiar with the air-circulation or ventilation system" in question, Defendants have met their discovery obligation with respect to Request No. 6.

**C.**     **Conclusion**

For the reasons stated above, **IT IS ORDERED** that Plaintiff's Second Motion to Compel Production of Documents (Doc. #93) is **DENIED**.

Dated: November 16, 2012                    s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                             United States Magistrate Judge


**NOTICE REGARDING OBJECTIONS**

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S. C. §636(b)(1).


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 16, 2012.

                                             s/Deborah J. Goltz for Felicia M. Moses
                                             FELICIA M. MOSES
                                             Case Manager